UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL HORACEK[1],

          Plaintiff,

v.

CARTER, *et al.*,

          Defendants.

_____/

Case No. 1:20-cv-11682
District Judge Thomas L. Ludington
Magistrate Judge Anthony P. Patti

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF No. 29)

**I.**    **RECOMMENDATION**: The Court should **DENY** the motion for partial

summary judgment filed by MDOC Defendants Jeanna Bitler, Rachael Long,

Doug Shelton, and Krista Vanatta.  (ECF No. 29.)

**II.**    **REPORT**

    **A.**    **Background**

        **1.**    **Factual Background**

    Plaintiff, a state prisoner proceeding *in forma pauperis*, filed the instant

action under 42 U.S.C. § 1983 on May 19, 2020, alleging deliberate indifference to

---

[1] Plaintiff's name has been repeatedly misspelled as "Horecek" throughout this litigation, due to a mistake apparently made by the Clerk's Office when the case was first inputted into the CM/ECF system.  The Court has just fixed this problem, and apologizes to Mr. Horacek for this oversight.

his medical needs in violation of the Eighth Amendment against the medical and

corrections staff at three different Michigan Department of Corrections (MDOC)

facilities.  (ECF No. 1.)  As stated in Judge Ludington's August 12, 2020 opinion

and order dismissing the complaint against six[2] of the named Defendants for failure

to state a claim, the allegations in Plaintiff's complaint can be summarized as

follows:

> Plaintiff arrived at Macomb Correctional Facility on May 19, 2017, having suffered a knee injury while at the Oakland County Jail. ECF No. 1 at PageID.4.  He could not ambulate without assistance, but Defendant Nurse Lisa Adray declined his requests for housing in the medical unit.  *Id*. at 5.  He was sent to a non-handicap accessible unit.  *Id*. at 5-6.
>
> On his arrival, he informed Defendant Corrections Officer Sims that he was unable to climb stairs, showing her his knee injury.  *Id*.  at 6.  She told him to either climb the stairs to his assigned unit or go to segregation.  *Id*.  Plaintiff, fearful of further injury, told her he could not climb the stairs.  *Id*.  Sims and another housing unit officer cited Plaintiff for disobeying a direct order, and handcuffed him behind his back, causing him to fall.  *Id*.  A corrections officer arrived to take Plaintiff to segregation.  *Id*.  The officer brought a wheelchair, because Sims and medical staff told him Plaintiff was unable to walk due to his injury.  *Id*.
>
> Plaintiff was thrown to the floor in his segregation cell, injuring his hip and back.  *Id*. at 7.  While there, he was unable to use the non-handicap-accessible toilet, so he soiled himself.  *Id*.  He was also unable to move to the food slot for food and drink.  *Id*.  During the six days he was in segregation, he spoke to Defendant Nurse Cindy (last name unknown) at least twice, seeking treatment for pain due to his

---

[2] The Court dismissed the complaint for failure to state a claim against the following six Defendants: P.A. Kim Farris, P.A. Marianne D. McKissick, Sgt. Slater, Dr. Perez, P.A. Block, and N.P. Oliver.  (ECF No. 5, PageID.71.)

knee and the hip and back injuries received in segregation. Cindy told him his knee injury was not serious. *Id*.

Plaintiff was released from segregation after several days by the Deputy Warden. *Id*. The Deputy Warden ordered Plaintiff moved to the medical unit and that he be housed in the medical wing with access to the handicap elevator. *Id*. However, Defendant Dr. Carter did not provide Plaintiff with the "no stair" order necessary for him to access the elevator. Carter also failed to order any accommodations for showers or meal assistance and failed to provide Plaintiff any pain management. *Id*. at 8.

Plaintiff informed staff in his new housing unit about his medical needs and the Deputy Warden's statements. Because the doctor's order did not include elevator access, Defendant Prison Counselor Jane Doe gave Plaintiff the choice of using the stairs or returning to segregation. *Id*. at 9. Plaintiff, using a walker, enlisted other inmates to aid him climbing and descending the stairs. However, he fell three times. *Id*. Finally, on June 6, 2017, Plaintiff obtained some of the handicap accommodations he sought. *Id*. at 10. However, he was then transferred to Newberry Correctional Facility [(NCF)] in Newberry, Michigan.

At Newberry, Defendant Dr. Perez evaluated Plaintiff's knee and ordered an X-ray and an MRI. An outside orthopedic specialist determined that he needed a total knee replacement but encouraged Plaintiff to lose weight and strengthen his leg before scheduling surgery. *Id*. at 11. The specialist also ordered a knee brace. *Id*. However, Defendants Nurse Vanatta and Physician Assistant Havens informed Plaintiff he would not receive a knee brace due to the cost. *Id*. at 12.

After the rejection of the knee brace, Plaintiff's knee gave out while he was walking and he fell, sustaining a significant injury to his shoulder. *Id*. After that injury and the entry of another order for a knee brace, Havens refused to provide one. *Id*. at 13. Dr. Perez requested another orthopedic consult, but Plaintiff was transferred to Central Michigan Correctional Facility [(STF)] before the appointment was obtained. *Id*.

3

At Central Michigan, Plaintiff informed Defendant Nurse Doug Shelton of his injuries and need for knee replacement, but Shelton told Plaintiff it would be a few months before he would be seen by a healthcare provider. *Id*. at 14. After several months, Plaintiff received X-rays of both his knee and shoulder and an MRI of the shoulder. He was told by Defendant Nurses Rachel Long, J. Bitler, and Shelton that the tests indicated his shoulder was fine.

Defendant Physician Assistant Block and Nurse Practitioner Oliver confirmed that in fact Plaintiff's shoulder injury was significant. *Id*. Plaintiff repeatedly informed healthcare of his severe pain and loss of function without obtaining further care. *Id*. at 15. Finally, Plaintiff was able to obtain an off-site consultation. An orthopedic physician informed Plaintiff that his shoulder had deteriorated to the point of requiring surgery, which would have been unnecessary with timely treatment. *Id*. Plaintiff underwent surgical scar tissue removal, but relief was temporary, and he is again experiencing pain and loss of functionality. *Id*. at 15-16. Nine months after his arrival at Central Michigan, Plaintiff finally had knee replacement surgery. *Id*. at 16.

(ECF No. 5, PageID.72-74.)

## 2.    Instant Motion

On June 29, 2021, Defendants Jeanna Bitler (STF), Rachael Long (STF),

Doug Shelton (STF), and Krista Vanatta (NCF) (herein collectively the MDOC

Defendants)[3] filed the instant motion for partial summary judgment pursuant to

---

[3] After the MDOC Defendants filed the instant motion, counsel accepted service and entered appearances on behalf of Defendant Sims and Lisa Adray, but would not accept service on behalf of Cindy LNU because the MDOC had not yet been able to identify her. (ECF No. 44.) It does not appear that Defendants Sims or Adray concurred in the present motion. The docket confirms completion of service, then, for all remaining Defendants with the exception of Cindy LNU and the Jane Doe Prison Counselor.

Fed. R. Civ. P. 56(a), asserting that Plaintiff failed to exhaust any claims against Bitler and Vanatta, and only exhausted some of his claims against Shelton and Long.  (ECF No. 29, PageID.192, 201-207.)

The Court granted Plaintiff's motion for an extension of time to respond, setting the deadline for December 3, 2021 (ECF No. 50, PageID.386), but Plaintiff filed his response brief on December 7, 2021 (ECF No. 55).  Nevertheless, the Undersigned has considered his response brief, signed under penalty of perjury,[4] in drafting this report and recommendation.  Plaintiff asserts that the Court should deny the MDOC Defendants' motion for partial summary judgment because he exhausted his claims against them.  (ECF No. 55.)  In so doing, he purported to attach, among other exhibits, an affidavit as Exhibit A, but apart from the cover page, it does not appear on the docket.  (*See* ECF No. 55, PageID.446.)

In the MDOC Defendants' reply brief, they argue that without the affidavit, Plaintiff failed to produce evidence in support of his timeliness arguments (ECF No. 58, PageID.524), and assert:

> [Plaintiff] has failed to exhaust administrative remedies on his claims against MDOC Defendants Vanatta or Bitler, and the only claims he exhausted were those against Long arising out of STF-937 and those

---

[4] Plaintiff's response brief may be considered an unsworn declaration under 28 U.S.C. § 1746 because he states: "Pursuant to 26 U.S.C. §1746, I declare and verify under penalty of perjury under the laws of the United States of America tat the foregoing is true to the best of my information, knowledge, and belief."  (ECF No. 55, PageID.445.)

against Shel[t]on arising out of STF-1095 and STF-1126.  The Court
should therefore dismiss Vanatta and Bitler from this suit, and dismiss
all unexhausted claims against Long and Shel[t]on.

(ECF No. 58, PageID.526.)[5]

Finally, Plaintiff filed a sur-reply, within which he requests leave to do so,

arguing that if Exhibit A is in fact missing from his response brief, it is the result of

the mailing process at NCF and, regardless, he verified his response brief.  (ECF

No. 61.)  In so doing, he attaches a re-creation of his affidavit, but the copy on the

docket is illegible.  (ECF No. 61, PageID.536-537.)

### B.    Standard

Under Fed. R. Civ. P. 56, "[t]he court shall grant summary judgment if the

movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is

material if it might affect the outcome of the case under governing law.  *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court "views the evidence,

all facts, and any inferences that may be drawn from the facts in the light most

favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95

F. App'x 132, 135 (6th Cir. 2004).

---

[5] From the context of the MDOC Defendants' arguments, the Court believes they
meant to attribute STF-937 to Shelton, and the other two grievances listed to Long.
Unfortunately, the MDOC Defendants made similar errors in their motion for
partial summary judgment.

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The nonmoving party "must make an affirmative showing with proper evidence in order to defeat the motion."  *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must . . . do more than simply show that there is some metaphysical doubt as to the material facts[.] . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).  In other words, summary judgment is appropriate when the motion "is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case[.] . .

.” *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The fact that Plaintiff is *pro se* does not reduce his obligations under Rule 56. Rather, “liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law.” *Durante v. Fairlane Town Ctr.*, 201 F. App’x 338, 344 (6th Cir. 2006). In addition, “[o]nce a case has progressed to the summary judgment stage, . . . ‘the liberal pleading standards under *Swierkiewicz* [*v. Sorema, N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.’” *Tucker v. Union of Needletrades, Indus., & Textile Emp.*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party’s “status as a pro se litigant does not alter [this] duty on a summary judgment motion.” *Viergutz v. Lucent Techs., Inc.*, 375 F. App’x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App’x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he “failed to present any evidence to defeat the government’s motion”).

### C. Discussion

#### 1. Exhaustion under the PLRA

Under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e *et seq.*, a prisoner may not bring an action "with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Congress enacted the provision to address the "outsized share" of prisoner litigation filings and to ensure that "the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 203-04 (2007). Put another way, the purpose of § 1997e(a) is to "reduce the quantity and improve the quality of prisoner suits[.]" *Porter v. Nussle*, 534 U.S. 516, 524 (2002). In addition, exhaustion "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotation marks and citation omitted).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211. The prison's grievance process determines when a prisoner has properly exhausted his or her claim. *Id*. at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of

proper exhaustion.").  Thus, the PLRA requires not only exhaustion, but *proper*

exhaustion.  *See Woodford*, 548 U.S. at 92 (concluding that if a prisoner fails to file

a procedurally proper grievance, he fails to satisfy the PLRA's exhaustion

requirement).  "[P]roper exhaustion of administrative remedies . . . means using all

steps that the agency holds out, and doing so *properly* (so that the agency addresses

the issues on the merits.)"  *Id*. at 90 (quotation marks and citation omitted).  As

long as the prison "clearly rejects a grievance for a reason explicitly set forth in the

applicable grievance procedure, a subsequent § 1983 claim based on the grievance

will be subject to dismissal for failure to properly exhaust."  *Burnett v. Howard*,

No. 2:09-CV-37, 2010 WL 1286256, at *1 (W.D. Mich. Mar. 30, 2010) (internal

quotation marks and citation omitted).  That said, a court "is not required to blindly

accept the state's application of the procedural rule."  *Reeves v. Salisbury*, No. 11-

cv-11830, 2012 WL 3206399, at *5 (E.D. Mich. Jan. 30, 2012), report and

recommendation adopted in part, rejected on other grounds, 2012 WL 3151594

(E.D. Mich. Aug. 2, 2012).

　　　　Finally, "inmates are not required to specially plead or demonstrate

exhaustion in their complaints."  *Jones*, 549 U.S. at 216.  Instead, failure to exhaust

administrative remedies is an affirmative defense under the PLRA.  *Id*. at 212-13.

As such, defendants bear the burden of proof on exhaustion.  *Surles v. Andison*,

678 F.3d 452, 456 (6th Cir. 2012) ("A PLRA defendant bears the burden of proving that a PLRA plaintiff has not exhausted his administrative remedies.").

### 2.    Grievance procedures at the MDOC

Pursuant to PD 03.02.130, dated July 9, 2007,[6] the administrative remedies available at the MDOC are as follows.  First, the inmate must attempt to resolve issues with the staff member involved within two business days of becoming aware of a grievable issue.  (ECF No. 29-2, PageID.213, ¶ P.)  "Dates, times, places, and names of all those involved in the issue being grieved are to be included."  (ECF No. 29-2, PageID.214, ¶ R.)  The inmate should receive a response at Step I within fifteen business days after receipt of the grievance.  (ECF No. 29-2, PageID.214-215, ¶ X.)

If the inmate is dissatisfied with the Step I disposition or does not receive a response by ten business days after the due date, he or she may file a Step II grievance using the appropriate form.  (ECF No. 29-2, PageID.215, ¶ BB.)  As with Step I, the inmate should receive the Step II response within 15 business days. (ECF No. 29-2, PageID.215, ¶ CC.)

---

[6] The MDOC Defendants attached to the instant motion only the version of PD 03.02.130 effective starting in 2007 (ECF No. 29-2), which was superseded on March 18, 2019.  Thus, any grievances filed by Plaintiff after that date are subject to revised PD 03.02.130.  The citations here are to the 2007 version, and these portions have not been substantively altered by the revised version.

Similarly, if the inmate is dissatisfied with the Step II response or does not receive a response by ten business days after the due date, the inmate may file a Step III grievance.  (ECF No. 29-2, PageID.216, ¶ FF.)  "To file a Step III grievance, the grievant must send a completed Step III grievance, using the Prisoner/Parolee Grievance appeal form (CSJ-247B), to the Grievance and Appeals Section within ten business days after receiving the Step II response or, if no response was received, within ten business days after the date the response was due, including any extensions."  (ECF No. 29-2, PageID.216, ¶ FF.)  The material is fully exhausted after the disposition of the Step III grievance.  *Surles*, 678 F.3d at 455 ("A grievant must undertake all steps of the MDOC process for his grievance to be considered fully exhausted.").

### 3.    The Court should decline to grant summary judgment on Plaintiff's claims against Vanatta

The MDOC Defendants identify Vanatta as an RN manager at NCF.  (ECF No. 29, PageID.194.)  In his complaint, Plaintiff alleges that while at NCF, he attended an appointment with an orthopedic specialist, who recommended total knee replacement, and ordered that he be provided a knee brace.  (ECF No. 1, PageID.10-13, ¶¶ 35, 39.)  But that upon return to NCF, Vanatta informed him he would not receive the knee brace.  (ECF No. 1, PageID.11-12, ¶ 36.)  Further, Plaintiff alleges that he sought care for his shoulder at NCF, but Vanatta informed him that nothing was wrong his shoulder.  (ECF No. 1, PageID.12, ¶ 38.)

12

The MDOC Defendants have attached to the instant motion Plaintiff's Step III Grievance Report, accompanied by an affidavit of certification (Exh. 2, ECF No. 29-3), and assert that Plaintiff filed five medical grievances at NCF, which Plaintiff does not appear to directly contest (ECF No. 29, PageID.204). They argue that on the basis of those grievances, Plaintiff failed to exhaust any Eighth Amendment deliberate indifference claim against Vanatta, and the Court should dismiss her from the lawsuit. (ECF No. 29, PageID.204-205, 207; ECF No. 58, PageID.523-524, 526.)

The MDOC Defendants correctly assert (ECF No. 29, PageID.204-205) that in NCF-17-08-1416-1g, Plaintiff complained about payment of a co-pay, rather than denial or delay of medical treatment related to his knee or shoulder. (ECF No. 29-3, PageID.295.) And although the MDOC Defendants argue that NCF-19-11-0447-28e was rejected at Step III as untimely (ECF No. 29, PageID.204-205), that grievance relates to treatment for Plaintiff's skin condition only (ECF No. 29-3, PageID.247-251), which is not the subject of this lawsuit. Accordingly, neither of these grievances exhaust Plaintiff's claims against Vanatta.

Plaintiff did, however, name Vanatta in two grievances complaining that he was denied a knee brace—NCF-18-04-0133-28a and NCF-18-04-0143-28a. (ECF No. 29-3, PageID.278-281, 283-286.) The MDOC Defendants argue that because each was rejected on procedural grounds for being duplicative of NCF-18-03-

13

0115-28e ("NCF-115"), which was rejected at Step III as untimely, Plaintiff failed

to exhaust his claims against Vanatta.  (ECF No. 29, PageID.204-205; ECF No. 58,

PageID.514.)

In NCF-18-04-0133-28a and NCF-18-04-0143-28a, Plaintiff complained at

Step I that Vanatta refused him the knee brace ordered by the orthopedic specialist.

(ECF No. 29, PageID.280, 285.)  Both were rejected through Step III as

duplicative of NCF-18-03-0115-28e (ECF No. 29-3, PageID.278-279, 281, 283-

284, 286), in which Plaintiff did not specifically name Vanatta, but complained

that he kited NCF healthcare, and was informed no knee brace had been ordered

(ECF No. 29-3, PageID.290).

The MDOC Defendants focus their argument on the timeliness of NCF-115

as opposed to duplication specifically, stating: "[W]hether [Plaintiff] exhausted

NCF-133 and NCF-134 turns on whether he exhausted NCF-115.  The records

show that NCF-115 was rejected because it was untimely received at Step III, so

[Plaintiff] failed to exhaust NCF-115."  (ECF No. 58, PageID.524.)  But the

MDOC Defendants carry the burden of proving lack of exhaustion, *Surles*, 678

F.3d at 456, and in Plaintiff's declaratory response, he states that he did timely file

the Step III appeal in NCF-115 by mailing it on May 1, 2018 (ECF No. 55,

PageID.436), which was within the appropriate timeframe according to the Step III

response (ECF No. 29-3, PageID.287).[7]  *See* PD 03.02.130(S) (ECF No. 29-2,

PageID.214, ¶ S) ("Grievances and grievance appeals at all steps shall be

considered filed on the date sent by the grievant.")[8]  And although Plaintiff's

affidavit with that assertion did not make it into his response, as the MDOC

Defendants point out (ECF No. 58, PageID.524), Plaintiff signed his response brief

under penalty of perjury (ECF No. 55, PageID.446).  Further, although they make

such arguments with respect to different grievances throughout the instant motion

and their reply brief, the MDOC Defendants do not argue that NCF-115 failed to

exhaust Plaintiff's claims against Vanatta because Plaintiff did not specifically

name her at Step I in that grievance.  Accordingly, the Court should find that the

MDOC Defendants have not met their burden of establishing that Plaintiff failed to

exhaust his Eighth Amendment claims against Vanatta.  Rather, Plaintiff has

demonstrated a genuine issue of material fact as to whether he did exhaust his

claims against her to the extent he alleges that she refused to provide a knee brace

as ordered.  (*See* ECF No. 1, PageID.11-12, ¶ 36.)

---

[7] The Step III response for NCF-18-03-0115-28e reads, in part: "In accordance to PD 03.02.130 grievances are to be rejected when untimely.  Pursuant to policy, this grievance was untimely filed by the grievant at the Step III appeal.  The grievant's Step III appeal was received on June 4, 2018.  While providing a grace period for standard mail, the grievance however was still not received in a suitable timeframe after the due date of May 9, 2018."  (ECF No. 29-3, PageID.287.)

[8] This is a citation to the 2007 version of PD 03.02.130.

**4.    The Court should also decline to grant summary judgment on all claims against Bitler, and find that Plaintiff exhausted claims against Long, Shelton, and Bitler**

According to the MDOC Defendants, Long and Shelton were registered nurses at STF, and Bitler was an RN Manager.  (ECF No. 29, PageID.194.)  In his complaint, Plaintiff alleges that upon arrival at STF, he informed intake nurse Shelton of his knee and shoulder injuries, and of his scheduled knee replacement surgery, but Shelton said his file contained nothing about the surgery, and it would be a few months before he could be seen by a provider.  Further, he claims:

> Over a period of many months, Plaintiff repeatedly attempted to obtain care and treatment for his serious knee injury and shoulder injury, but was repeatedly informed that there was nothing wrong with him.  Plaintiff eventually managed to obtain an x-ray of his right knee and left shoulder.  After the shoulder x-ray, Plaintiff was informed by RN Rachel Long and RN J. Bitler, that there was "nothing wrong" with Plaintiff's shoulder.  Plaintiff eventually had an MRI performed. Plaintiff met again with RN Shelton and RN Long, whereby he was told that the MRI showed everything was fine.  Plaintiff subsequently met with PA Block and NP Oliver, both of which informed the Plaintiff that his shoulder injury was significant and that the MRI showed that all the tendons and ligaments were "frayed".  When Plaintiff asked PA Block what "frayed" meant, PA Block informed Plaintiff that it meant partially torn.

(ECF No. 1, PageID.14, ¶ 43.)

The MDOC Defendants allege five medical grievances at STF, which Plaintiff does not appear to directly dispute, so the Undersigned has focused on those.  In STF-19-11-1138-28e, Plaintiff complained at Step I of the medical treatment he received for his skin condition.  (ECF No. 29-3, PageID.255.)

16

Accordingly, any argument regarding its rejection based on timeliness is unnecessary, and the Court should find that this grievance does not exhaust any of the above claims against Shelton, Bitler, or Long.

However, the Court should find that Plaintiff did successfully exhaust his claims against Long and Shelton in STF-18-12-1126-12d1, STF-18-10-0937-12d1, and STF-18-12-1095-12d1, as the MDOC Defendants essentially concede.  In each grievance, Plaintiff complained at Step I of inadequate medical care related to his knee and shoulder, but only generally identified STF healthcare, STF nurse, or STF male nurse.  (*See* ECF No. 29-3, PageID.262-276.)  In the instant motion, Defendants argue that because the grievances do not specifically identify Bitler, Long, or Shelton, they did not exhaust Plaintiff's claims against them.  (ECF No. 29, PageID.205-206.)  However, Plaintiff asserts in response that because each of these grievances was decided on the merits through Step III, such an argument is waived (ECF No. 55, PageID.437-438), and it seems he is correct.  (*See* ECF No. 29-3, PageID.262-276.)  *See Reed-Bey*, 603 F.3d 322, 325 (6th Cir. 2010) ("When prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we."); *Cook v. Caruso*, 531 F. App'x 554, 563 (6th Cir. 2013) (if an inmate commits a procedural error, but receives merits-based responses at each step of the grievance process, the inmate has properly exhausted his claim).

Regardless and more importantly, though, Plaintiff states in his response brief that he learned from his medical records that Long is the nurse he complained of in STF-18-12-1126-12d1 and STF-18-12-1095-12d1, and Shelton is the nurse he complained of in STF-18-10-0937-12d1.  (ECF No. 55, PageID.439-441.)  And the MDOC Defendants do not contest these assertions, conceding that the grievances exhaust some claims against Long and Shelton.  (ECF No. 29, PageID.207; ECF No. 58, PageID.526.)

This leaves only exhaustion of claims against Bitler.  Defendants argue that Plaintiff failed to exhaust any claims against Bitler, and she should therefore be dismissed from the lawsuit.  Plaintiff asserts that because Bitler is listed as the Step I respondent or reviewer in STF-18-12-1126-12d1, STF-18-10-0937-12d1, and STF-18-12-1095-12d1, she made an independent healthcare decision in the matter and is, therefore, a proper defendant (ECF No. 55, PageID.439-441), but "[t]he mere denial of a prisoner's grievance states no claim of constitutional dimension," *Alder v. Correctional Medical Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003).  *See also Martin v. Harvey*, 14 F. App'x 307, 309 (6th Cir. 2001) (denial of a grievance appeal complaining of inadequate medical care does not equate to denial of the request to receive medical care).

The MDOC Defendants have not, however, met their burden of establishing that Plaintiff failed to exhaust his claims against Bitler in STF-09-03-0272-28e.

*Surles*, 678 F.3d at 456.  Plaintiff did not specifically identify Bitler or another

Defendant in the grievance, but stated at Step I, in part: "On March 12, 2019, I was

seen by STF healthcare (nursing) regarding my ongoing left knee and right

shoulder injuries.  I requested to be seen as I have not to date received any actual

treatment or care of the injuries (i.e. ortho consults, surgeries, etc.)."  (ECF No. 29-

3, PageID.260.)  The MDOC Defendants argue not that the grievance failed to

specifically identify the nursing staff involved, but that this grievance failed to

exhaust claims against them because it was rejected at Step III as untimely.  (ECF

No. 29, PageID.205; ECF No. 58, PageID.524.)  However, as with NCF-18-03-

0115-28e discussed above, Plaintiff asserts that he did timely file his Step III

appeal in STF-272, by mailing the appeal on May 10, 2019, which was within the

appropriate timeframe according to the Step III response (ECF No. 29-3,

PageID.257).[9]  *See* PD 03.02.130(S) (ECF No. 29-2, PageID.214, ¶ S)

("Grievances and grievance appeals at all steps shall be considered filed on the

---

[9] The Step III response for STF-09-03-0272-28e reads, in pertinent part: "In accordance to PD 03.02.130 grievances are to be rejected when untimely.  Pursuant to policy, this grievance was untimely filed by the grievant at the Step III appeal. The grievant's Step III appeal was received on May 23, 2019.  While providing a grace period for standard mail; the grievance however was still not received in a suitable timeframe after the due date of May 11, 2019."  (ECF No. 29-3, PageID.257.)

date sent by the grievant.")[10]  And although Plaintiff's affidavit with that assertion did not make it into his response, as the MDOC Defendants point out (ECF No. 58, PageID.524), Plaintiff signed his response brief under penalty of perjury (ECF No. 55, PageID.446).  Accordingly, the Court should find that the MDOC Defendants have not met their burden of establishing that Plaintiff failed to exhaust his Eighth Amendment claims against Bitler for failing to take seriously, or provide care for, his shoulder injury.

### D.  Conclusion

The Court should **DENY** the MDOC Defendants' motion for partial summary judgment.  (ECF No. 29.)  In so doing, the Court should find that Plaintiff exhausted his claims against Shelton and Long, and that there is a disputed issue of material fact as to whether he exhausted his claims against Vanatta to the extent he alleges that she refused to provide a knee brace as ordered, and his claims against Bitler to the extent he alleges that she did not take seriously, or provide care for, his shoulder injury.

## III.  PROCEDURE ON OBJECTIONS

---

[10] I note that in the version of MDOC PD 03.02.130 which became effective on March 18, 2019, "[g]rievances and grievance appeals at all steps shall be considered filed on the date *received* by the Department," rather than the date sent. PD 03.02.130(T) (emphasis added).  But Plaintiff listed 3-14-19 as "Today's Date" on the Step I form for STF-272, despite the fact that it was not received by the Grievance Coordinator's Office until March 19, 2019.  (ECF No. 29-3, PageID.260.)  Thus, it appears that the 2007 version applies.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc*.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc*.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

21

Dated:  March 10, 2022

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE